**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

KYLE EVAN PETERSON, AKA Tyler
Allen Fish, AKA Tyler Allan Fisk,
AKA Kyle Petersen, AKA Kyle E.
Petersen, AKA Kyle Peterson, AKA
Kyleevan Peterson,
*Defendant-Appellant.*

No. 19-10246

D.C. No.
1:17-cr-00255-
LJO-SKO-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted November 17, 2020
Pasadena, California

Filed May 3, 2021

Before: Johnnie B. Rawlinson, Danielle J. Hunsaker, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Rawlinson

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's orders denying (1) the defendant's motion to withdraw his guilty plea to receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), and (2) his motions to suppress evidence of sexually explicit images of minors found on two cell phones.

In seeking to withdraw his guilty plea, the defendant contended that he was not fully informed of the essential elements of the crime of receipt of child pornography—specifically, that the district court failed to explain the Government's burden to prove that he knew the visual depiction was a minor and that he knew the visual depiction showed the minor engaged in sexually explicit conduct. The panel held that the district court acted within its discretion in denying the motion to withdraw the guilty plea. The panel wrote that as the grammatical structure of § 2252 applies "knowingly" to both the sexually explicit nature of the material and the age of the performers, the indictment, by tracking that language, adequately informed the defendant that the crime of receipt of materials invoking the sexual exploitation of minors required proof of those elements. More importantly, the defendant affirmed in his plea agreement and to the court that he had read the charges contained in the indictment, discussed them with his attorney who "fully explained" the charges, and that he fully understood the nature and elements of the crime charged.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The defendant argued that the parole searches in which the cell phones were seized were not authorized because his parole conditions did not unambiguously include cell phones and their content as property subject to search.  Affirming the denial of the motion to suppress with respect to the parole searches, the panel explained that the defendant, a California parolee, had the same diminished privacy interest, and the State of California had the same substantial interest in supervising parolees as discussed in *United States v. Johnson*, 875 F.3d 1265 (9th Cir. 2017).

The defendant argued that the illegal seizure of his cell phones during the parole searches required suppression of forensic evidence subsequently obtained pursuant to a warrant because the phones had been illegally kept in the possession of the Government.  Affirming the denial of the motion to suppress with respect to the forensic searches, the panel wrote that any illegality in the initial seizure of forensic images from the defendant's cell phones was cured by the subsequent issuance of a warrant to search the forensic images from the phones that were legally seized as the result of valid parole searches.

**COUNSEL**

Devin Burstein (argued), Warren & Burstein, San Diego, California, for Defendant-Appellant.

Brian W. Enos (argued), Assistant United States Attorney; Camil A. Skipper, Appellate Chief; McGregor W. Scott, United States Attorney; United States Attorney's Office, Fresno, California; for Plaintiff-Appellee.

**OPINION**

RAWLINSON, Circuit Judge:

Appellant-Defendant Kyle Peterson (Peterson) appeals the district court's order denying his motion to withdraw his guilty plea, contending that the district court failed to apprise him of the essential elements of his crime. He also challenges the district court's order denying his motion to suppress evidence of sexually explicit images of minors found on two separate cell phones. Because the district court committed no error, we affirm.

## I. BACKGROUND

In April 2017, Peterson was released from state prison in California on parole. As a condition of his release, Peterson signed a Notice and Conditions of Parole Form (Parole Conditions) agreeing, among other conditions, that as a parolee he could be searched at "any time . . . with or without a search warrant, with or without cause." Peterson also specifically agreed not to possess a cell phone with a camera, use social media sites, or possess "electronic media that

depicts sexually explicit conduct." Peterson "consent[ed] to announced or unannounced examination and/or search of electronic devices to which [he had] access for the limited purpose of detecting content prohibited by your conditions of parole."

While conducting searches under the Parole Conditions, a parole agent discovered cell phones in Peterson's possession on May 23, 2017, and July 6, 2017, respectively, both of which contained sexually explicit images of minors, in violation of the terms of his parole. The parole agent seized the phones and delivered them to federal agents at Homeland Security Investigations (HSI) to conduct forensic searches of images on the phones. After each search, a California court revoked Peterson's parole. He was subsequently indicted in federal court for Receipt of Material Involving the Sexual Exploitation of Minors, in violation of 18 U.S.C. § 2252(a)(2), among other charges.

Peterson moved to suppress the evidence found during the forensic searches of the phones. The Government did not oppose Peterson's motion to suppress "with respect to HSI's forensic findings of either phone," because an officer from the California Department of Corrections and Rehabilitation (CDCR) interpreted Policy No. 81034.5 of the CDCR's Operation Manual as providing that once parole was revoked, a warrant was required to search items seized during a warrantless parole search.[1] In response, the district court

---

[1] Although the phones were seized by the parole agent and preliminarily searched before revocation of Peterson's parole, they were not searched by HSI until after his parole was revoked. According to the CDCR officer's interpretation of the policy, a warrant was required to search the phones once parole was revoked. Because no warrant was

entered a minute order stating: "The evidence analyzed by HSI from the cell phone searches . . . that occurred on May 23 and July 6, 2017 is suppressed." However, the parole officer's "on-site previews of the phones' contents [were] not suppressed."

The Government subsequently obtained a warrant to search both phones. The affidavit supporting the warrant application specifically informed the court of the prior forensic search of the phones and affirmed that no information from that search was used in the application. The affidavit detailed that information used in the application was derived from the parole agent's preliminary searches when the phones were initially seized and viewed by the parole agent. Following issuance of a search warrant, the phones were "reanalyzed utilizing previously captured forensic images," and child pornography was retrieved.

Peterson again moved to suppress evidence obtained from the phones. Peterson argued that his parole conditions did not "unambiguously encompass" cell phones. Peterson maintained that the illegal seizure of his cell phones during the parole searches required suppression of evidence obtained from the parole searches and evidence obtained from HSI's forensic searches pursuant to the warrant. After briefing and oral arguments, the district court denied the motion to suppress.

Following the district court's ruling, Peterson entered a conditional guilty plea to count 1, which charged Peterson

---

obtained prior to the forensic searches performed by HSI after revocation of parole, the Government did not oppose Peterson's motion to suppress the result of those searches.

with receipt of materials involving the sexual exploitation of minors.  Peterson preserved his right to appeal the district court's denial of his second motion to suppress.  Before accepting the guilty plea, the court reviewed the terms of the plea agreement with Peterson.  Peterson confirmed that after reviewing the plea agreement with counsel, he understood and agreed to the terms of the agreement.

Before sentencing, Peterson moved to withdraw his guilty plea.  Peterson argued that he was not fully informed of the essential elements of the crime of receipt of child pornography as set forth in 18 U.S.C. § 2252(a)(2), and therefore his plea was invalid.  After briefing and oral arguments, the district court denied Peterson's motion.  The district court then sentenced Peterson to 162 months in custody.  Peterson timely filed his notice of appeal.

## II. STANDARDS OF REVIEW

"We review de novo the sufficiency of a Rule 11 plea colloquy" and "a district court's denial of a motion to withdraw a guilty plea for abuse of discretion." *United States v. Ross*, 511 F.3d 1233, 1235 (9th Cir. 2008) (citations omitted). "We review the denial of [a defendant's] suppression motion *de novo*, and the district court's factual findings for clear error. . . ." *United States v. Johnson*, 875 F.3d 1265, 1273 (9th Cir. 2017) (citation and internal quotation marks omitted).

## III.    DISCUSSION

### A.  Withdrawal of Plea

Peterson contends that he was not fully informed of the essential elements of the crime of receipt of child pornography.  More specifically, Peterson asserts that the district court failed to explain the Government's burden to prove that he knew the visual depiction was of a minor and that he knew the visual depiction showed the minor engaged in sexually explicit conduct.

In *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003), interpreting Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure, we held that "[p]rior to sentencing, a defendant can withdraw his guilty plea only by showing a fair and just reason for withdrawal." (citations omitted).  "[T]he decision to allow withdrawal of a plea is solely within the discretion of the district court." *Id.* (citations omitted).

In *Bradshaw v. Stumpf*, 545 U.S. 175, 182–83 (2005), the United States Supreme Court held that a defendant's "guilty plea would indeed be invalid if he had not been aware of the nature of the charges against him, including the elements of the . . . charge to which he pleaded guilty."  The Court reasoned that "[a] guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 183 (citation and internal quotation marks omitted).  "Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid." *Id*. (citation omitted).

Nevertheless, in *Bradshaw*, the Court rejected the argument that "the judge must himself explain the elements of each charge to the defendant on the record." *Id*. Rather, Rule 11 requirements may be satisfied if the record accurately reflects explanation of the elements of the crime. In addition, the court usually may rely on representations from defense counsel "that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Id*. Indeed, "no specific method of advising the defendant is mandated." *United States v. Rivera-Ramirez*, 715 F.2d 453, 457 (9th Cir. 1983); *see also United States v. Mancinas-Flores*, 588 F.3d 677, 682 (9th Cir. 2009) (noting that "a court need not rely on the plea colloquy alone," but may rely upon "anything that appears on the record") (citation omitted); *United States v. Kamer*, 781 F.2d 1380, 1384 (9th Cir. 1986) (indicating that in "non-complex cases, a reading of the indictment may suffice" to inform the defendant of the nature of the charges) (citation and emphasis omitted).

Contrary to Peterson's contention, he was fully informed of the essential elements of the crime of receipt of child pornography. 18 U.S.C. § 2252 covers:

> (a) Any person who . . . (2) knowingly receives . . . any visual depiction . . . that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce . . . , if–

> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> (B) such visual depiction is of such conduct. . . .

Count 1 of Peterson's indictment tracked this language by charging that Peterson

> did knowingly receive at least one visual depiction, the producing of which involved at least one minor engaging in sexually explicit conduct and which depiction was of such conduct, as defined in Title 18, United States Code, Section 2256, and which had been shipped or transported in or affecting interstate or foreign commerce, had been sent or received using any means or facility of interstate or foreign commerce, and which contained materials which had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, all in violation of Title 18, United States Code, Section 2252(a)(2).

In his plea agreement, Peterson acknowledged that he had "read the charges against him contained in the Indictment, and *those charges ha[d] been fully explained to him by his attorney*." Peterson further acknowledged that he "*fully underst[ood] the nature and elements* of the crime charged in Count One of the Indictment to which he [was] pleading guilty, together with the possible defenses thereto, *and he ha[d] discussed them with his attorney*." The plea

agreement, again tracking the language in 18 U.S.C. § 2252(a), set forth the elements of the crime of "Receipt of Materials Involving the Sexual Exploitation of Minors" as follows:

> First,   the defendant knowingly received;
>
> Second,  any visual depiction that had been produced using materials that were mailed, shipped, or transported in interstate or foreign commerce;
>
> Third,   by any means, including by computer;
>
> Fourth,  the producing of such visual depiction(s) involved the use of a minor engaging in sexually explicit conduct; and
>
> Fifth,   the visual depiction was of such conduct.

At the change of plea hearing, Peterson affirmed that he signed the plea agreement and he had the opportunity to review the agreement with his lawyer, that his lawyer answered any questions he had to his satisfaction, and that he had no remaining questions about the agreement. Peterson acknowledged that he "underst[ood] the elements of Count I," and that he did not have "any questions at all about the plea agreement." The court then read count 1 of the indictment as set forth above, to which Peterson pled "guilty."

The indictment, which the district court read in open court to Peterson and which tracked the language of 18 U.S.C. § 2252(a), adequately set forth the elements of the crime of receipt of materials involving the sexual exploitation of minors. Admittedly, the Supreme Court has held that "the term 'knowingly' in § 2252 extends both to the sexually explicit nature of the material and to the age of the performer." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Nevertheless, the indictment in this case was sufficient because it tracked the language of 18 U.S.C. § 2252(a)(2), the same language the Supreme Court interpreted in *X-Citement Video*. *See X-Citement Video*, 513 U.S. at 77–78 (determining "as a matter of grammar it is difficult to conclude that the word 'knowingly' modifies one of the elements in subsections (1)(A) and (2)(A) [of 18 U.S.C. § 2252], but not the other," and applying "the term 'knowingly' . . . to both elements").

As the grammatical structure of § 2252 applies "knowingly" to both the sexually explicit nature of the material and to the age of the performers, the indictment, by tracking that language, adequately informed Peterson that the crime of receipt of materials involving the sexual exploitation of minors required proof of those elements. *See id.*; *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) (concluding that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished") (citation and internal quotation marks omitted).

More importantly, Peterson affirmed in his plea agreement and to the court that he "ha[d] read the charges

against him contained in the Indictment," discussed them with his attorney, who "fully explained" the charges, and that he "fully underst[ood] the nature and elements of the crime charged." The district court was entitled to rely upon Peterson's assurance that he understood the element of the crime to which he entered a guilty plea. *See United States v. Hyde*, 520 U.S. 670, 677 (1997) (explaining that a "guilty plea is . . . a grave and solemn act," that should not be degraded "into something akin to a move in a game of chess") (citation and internal quotation marks omitted); *see also Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986) (noting that "statements made by a criminal defendant contemporaneously with his plea should be accorded great weight" because "[s]olemn declarations made in open court carry a strong presumption of verity") (citations omitted).

Peterson cites *United States v. Portillo-Cano*, 192 F.3d 1246, 1249 (9th Cir. 1999), *as amended*, to argue that Rule 11 requires the court to personally explain the nature of each element of the crime, and the court may not rely on the reading of the indictment, the plea agreement, or defendant's affirmation that his attorney explained the elements of the charges. In *Portillo-Cano*, however, we expressly referenced the district court's failure to "mention" the indictment or "the acts [the defendant] must have committed in order to be found guilty of the crime." 192 F.3d at 1251 & n.4. These references would have been superfluous if our precedent required the judge to personally explain the elements of each charge to the defendant on the record. Instead, we noted that the prosecutor, rather than the judge, could explain the charges. *See id.* at 1251 n.4. In *Portillo-Cano*, we reviewed the record of the plea proceedings to determine whether the district court engaged in a plea colloquy demonstrating that

the defendant understood the nature of the charges.  *See id.* at 1250–52.

Peterson's reliance on *United States v. Szymanski*, 631 F.3d 794 (6th Cir. 2011), is similarly unavailing.  Unlike Peterson, Szymanski "waived indictment," and did not enter into a plea agreement.  *Id*. at 796.  In addition, the record left the court with the "the strong impression that the defendant, his counsel, as well as government counsel at the arraignment did not have an adequate understanding of the nature of the charge at issue."  *Id*.  Here, Peterson's indictment, his plea agreement, and the colloquy with the court informed him of the elements required to be proven.  Peterson does not assert that his counsel failed to inform him of the knowledge requirement for each element of the offense, and there is no indication that the Government misunderstood the elements.

## B.  Motions to Suppress

Peterson argues that the parole searches were not authorized because his parole conditions did not unambiguously include cell phones and their content as property subject to search.  Peterson also contends that the illegal seizure of his cell phones in the parole search required suppression of the forensic evidence subsequently obtained from the warrant because the phones had been illegally kept in the possession of the Government.

### 1.  Motion to Suppress Parole Searches

In *Johnson*, we affirmed the district court's order denying a motion to suppress evidence obtained as a result of the warrantless searches of a parolee's cell phone.  875 F.3d at 1273–76.  We recognized that "status as a parolee

significantly diminishes one's privacy interests" and that parolees "hold the most limited privacy interests among people convicted of a crime but [who] are not actually imprisoned." *Id*. at 1273, 1275 (citations and footnote reference omitted). California parolees are "'subject to search or seizure by a probation or parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause.'" *Id*. at 1274 (quoting Cal. Penal Code § 3067(b)(3)). We reasoned that "[r]equiring officers to obtain a warrant before searching a parolee's cell phone would often undermine the state's ability to supervise effectively thousands of parolees and prevent concealment of criminal conduct as in the case here." *Id*. (citation omitted). Accordingly, we upheld the warrantless searches of a parolee's cell phone against a Fourth Amendment challenge. *See id.* at 1274–76.

Peterson, a California parolee, had the same diminished privacy interest, and the State of California had the same substantial interest in supervising parolees as discussed in *Johnson*. *See id.* at 1273–74. Peterson agreed that as a parolee he and his property could be searched at any time with or without a warrant. Peterson specifically agreed not to possess a cell phone with a camera, use social media sites, or possess "electronic media" displaying sexually explicit content. Finally, he consented to "announced or unannounced examination and/or search of [his] electronic devices." The district court, therefore, appropriately denied Peterson's motion to suppress with respect to the parole searches. *See id.* at 1273–74.

### 2.  Motion to Suppress Forensic Searches

Peterson argues that the warrantless seizure of his cell phones during the parole searches required suppression of the forensic evidence subsequently obtained by warrant.  As just discussed, however, the parole searches were constitutionally permissible, and this argument fails.

The Government did not rely on the independent source doctrine because the "original parole searches were valid." On appeal, Peterson asserts that the phones "were reanalyzed utilizing previously captured forensic images."  According to Peterson, these images were ordered suppressed when the Government filed a non-opposition to his first motion to suppress.  Peterson argues that "there can be no independent source when there is no independent search."

Peterson's argument is unavailing.  Peterson failed to argue before the district court that the Government did not make new forensic images to analyze after obtaining the warrant, and therefore the argument is waived.  *See United States v. Keesee*, 358 F.3d 1217, 1220 (9th Cir. 2004) (holding that a "theory for suppression not advanced in district court cannot be raised for the first time on appeal"). Had Peterson raised this argument below, the district court could have ruled on this factual dispute in the first instance, and if necessary, the asserted error could have been corrected by obtaining new forensic images of the phones.  *See id.* (explaining that had the defendant made his suppression argument to the district court, the issue could have been addressed).  The district court's order denying Peterson's motion to suppress was without error.

## IV.    CONCLUSION

The plea colloquy between the district court and Peterson adequately apprised Peterson of the elements of the offense for which he was indicted.  Consequently, the district court acted within its discretion in denying Peterson's motion to withdraw his guilty plea.  Any illegality in the initial seizure of forensic images from Peterson's cell phones was cured by the subsequent issuance of a warrant to search the forensic images from cell phones that were legally seized from Peterson as the result of valid parole searches.

**AFFIRMED.**